IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JEFFERY ALLEN OPPEDAHL, individually, ) | Case No. 4:14-cv-00475-SMR-CFB |
| ANGELA MARIE OPPEDAHL, individually ) | |
| and as natural mother and next friend of ) | |
| W.T.O., a minor, M.J.O., a minor, and S.M.O., ) | |
| a minor, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
|     v. ) | |
| ) | |
| NAVISTAR, INC., formerly known as ) | ORDER GRANTING |
| INTERNATIONAL TRUCK AND ENGINE ) | DEFENDANT NAVISTAR, INC.'S |
| CORPORATION and INTERNATIONAL ) | MOTION FOR SUMMARY JUDGMENT |
| HARVESTER CO., a corporation; ) | |
| MOBILE DRILL INTERNATIONAL, INC., ) | |
| also known as MOBILE DRILL, L.L.C., ) | |
| formerly known as MOBILE DRILL ) | |
| COMPANY, INC., a corporation; CENTRAL ) | |
| MINE EQUIPMENT COMPANY, ) | |
| a corporation; and USEXPLORATION ) | |
| EQUIPMENT COMPANY, a corporation, ) | |
| ) | |
|     Defendants. ) | |

Plaintiff Jeffery Allen Oppedahl was tragically injured when he became entangled in an

unguarded auger at work. This action was brought against the possible suppliers of the auger, the

manufacturer of the drill that drove the auger, and the manufacturer of the truck on which the auger

and drill were mounted. The truck's manufacturer, Defendant Navistar, Inc. ("Navistar"), filed a

Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Motion"), seeking

dismissal of all Counts against it. [ECF Nos. 53; 6].[1] With its Motion, Navistar filed a supporting

---

[1] On May 1, 2015, the Court entered an order directing all parties to refile all documents to
comply with the Local Rules by using only the initials of minor children and directing the Clerk to
(continued...)

brief ("Defendant's Brief"), which included a statement of uncontroverted facts and an appendix

("Defendant's Appendix"). [ECF Nos. 6-1; 6-2; 53-1; 53-2].  On December 31, 2014, Plaintiffs filed

a resistance ("Plaintiffs' Brief"), which included a statement of disputed facts, and an appendix

("Plaintiffs' Appendix").   [ECF Nos. 32-10; 32-1 to 32-9; 66-10; 66-1 to 66-9].   On January 12,

2015, Navistar replied, [ECF No. 37],[2] and filed a response to Plaintiffs' statement of disputed facts,

[ECF No. 39].[3]  Oral argument  on the Motion was not requested, and the matter is submitted.  For

the reasons set forth below, the Court grants Navistar's Motion.

## I.  STANDARD OF REVIEW

First is how to treat Navistar's Motion.  Under Federal Rule of Civil Procedure 12(d), if a

party seeks to dismiss an action and "matters outside the pleadings are presented to and not excluded

by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ.

P. 12(d); *see BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687–88 (8th Cir. 2003)

(discussing conversion of motion to dismiss to motion for summary judgment).  "Rule [12(d)] is not

permissive."  *BJC Health Sys.*, 348 F.3d at 687.  Both parties have submitted documents outside the

pleadings, and the Court has not excluded them.  Thus, the Court will treat Navistar's Motion as one

for summary judgment.

Familiar standards govern summary judgment motions.  "Summary judgment is proper if

there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter

---

[1](...continued)
seal all previously filed documents.  [*See* ECF No. 46].  Docket citations in this Order are to those
newly filed documents and to the now-sealed documents, unless otherwise noted.

[2] Navistar has not yet refiled this document using only the initials of minor children.

[3] Navistar has not yet refiled this document using only the initials of minor children.

of law." *Paulino v. Chartis Claims, Inc.*, 774 F.3d 1161, 1163 (8th Cir. 2014); Fed. R. Civ. P. 56(a).

The movant bears the burden of demonstrating there are no genuine issues of material fact. *Gibson v. Geithner*, 776 F.3d 536, 539 (8th Cir. 2015). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Doe v. Hagar*, 765 F.3d 855, 860 (8th Cir. 2014). Courts must view "'the facts in the light most favorable to the nonmoving party and giv[e] that party the benefit of all reasonable inferences that can be drawn from the record.'" *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015) (quoting *Johnson v. Wells Fargo Bank, N.A.*, 744 F.3d 539, 541 (8th Cir. 2014)).

Although discovery need not be completed before a district court can grant summary judgment, "'summary judgment is proper only after the nonmovant has had adequate time for discovery.'" *Ray v. Am. Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010) (quoting *In re TMJ Litigation*, 113 F.3d 1484, 1490 (8th Cir. 1997)). Rule 56(d) permits a court to delay a summary judgment decision until adequate discovery is completed if the party opposing summary judgment shows it cannot present facts essential to justify its opposition. Fed. R. Civ. P. 56(d); *Ray*, 609 F.3d at 923. Plaintiffs moved for discovery time, but their motion was denied. [*See* ECF No. 42]. When a Rule 56(d) motion is appropriately denied, a district court does not abuse its discretion in ruling on the summary judgment motion. *See Ray*, 609 F.3d at 923–24 (holding district court did not abuse discretion in ruling on summary judgment motion after denying Rule 56(f) continuance);[4] *see also Robinson v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006) (holding court did not abuse discretion

---

[4] Rule 56(d) was formerly Rule 56(f). *Nat'l Sur. Corp. v. Dustex Corp.*, 291 F.R.D. 321, 326 n.4 (N.D. Iowa 2013).

in ruling on summary judgment motion when the plaintiff did not request a delay or show a delay was justified).

## II.  RELEVANT FACTS

The following facts are undisputed, unless otherwise indicated.  The Iowa Department of Transportation ("IDOT") invited bids on a truck, and Navistar submitted the low bid.  [Pls.' Br. at 8; Pls.' App., ECF Nos. 66-2 at 2; 32-2 at 2].[5]  According to Plaintiffs, IDOT notified Navistar in a purchase order that a drill and auger would be mounted on the Navistar truck and would be operated using the truck's power takeoff system.  *Id.*  On or about June 18, 1998, a 4800 4x4 truck VIN 1HTSEAANXXH582438 was manufactured in part and assembled by Navistar.  [Def.'s Br. at 6; Def.'s App. at 4–5].  At the time of its assembly, the truck did not have a drill or an auger.  *Id.*

Navistar asserts that on or before July 22, 1998, IDOT purchased the truck from O'Halloran International, Inc.  [Def.'s Br. at 6; Def.'s App. at 6–7].  After IDOT received the Navistar truck, its workers removed a drill from a Ford F-700 truck, disassembled it, and repaired it.  [Pls.' Br. at 8; Pls.' App., ECF Nos. 66-2 at 2; 32-2 at 2].  The drill, a B47 drill with identification number 89165, was allegedly designed and manufactured by Defendant Mobile Drill International, Inc. ("Mobile Drill")  and sold to the State of Iowa.  [Def.'s Br. at 6; ECF No. 1-1 at 1].  When IDOT workers in 1999 reassembled and mounted the drill and an auger on the Navistar truck, no guard or cage was placed around the auger's moving parts.  [Pls.' Br. at 8, 9; Pls.' App., ECF Nos. 66-2 at

---

[5] In their Statement of Disputed Facts, Plaintiffs assert it was Navistar that submitted the low bid.  [Pls.' Br. at 8].  According to an affidavit in their Appendix, however, the low bid was submitted by O'Halloran International, Inc., the entity from which IDOT ultimately purchased the Navistar truck.  [Pls.' App., ECF Nos. 66-2 at 2; 32-2 at 2].  O'Halloran International, Inc. is not a party to this  action, and the connection between O'Halloran and Navistar, or any other Defendant, is unclear.  At any rate, Defendants do not dispute the assertion it was Navistar that submitted the bid.  [*See* ECF No. 39 at 1].

2; 32-2 at 2].  According to an IDOT employee's affidavit, this work was completed by August 5,

1999.  [Pls.' App., ECF Nos. 66-2 at 2; 32-2 at 2].  IDOT records indicate, however, that no hours

or miles were charged to the Navistar truck until October 2000.  *Id.*; [Pls.' App., ECF Nos. 66-4; 66-

5; 32-4; 32-5].

    In January 2013, Plaintiff Jeffery Oppedahl was using the truck-mounted-drill-and-auger

system as part of his work near Sac City, Iowa.  [Pls.' Br. at 8].  At some point, Oppedahl became

entangled in the system's unguarded, rotating auger.[6]  *Id.*; [Pls.' App., ECF No. 66-6 at 5; 32-6 at

5].  As a result of the incident, IDOT was cited by the Iowa Occupational Safety and Health Bureau.

[Pls.' Br. at 8–9].  A 2003 safety standard issued by the American National Standard Institute

provides a standard for guards:  "The design and construction of the barrier guard shall ensure that

individuals cannot reach the hazards by reaching over, under, around or through the barrier guard."

[Pls.' Br. at 9].  Plaintiffs filed their state court Petition at Law and Jury Demand ("Petition") on

August 5, 2014.  [ECF No. 1-1 at 1].

### III.  PROCEDURAL BACKGROUND

    Plaintiffs allege eleven counts against the four Defendants in their Petition.  They allege

Navistar manufactured and sold the truck that was a component of the drill-and-auger system that

caused Oppedahl's injuries.  *Id.* ¶ 4.  Against Navistar, Plaintiffs assert the following causes of

action: strict products liability (Count I),  negligence (Count II), loss of spousal consortium (Count

---

[6] The record on summary judgment does not disclose Oppedahl's injuries.  According to
Plaintiffs' state court Petition, though, Oppedahl was pinched between the auger and the framework
of the drill's supports.  [ECF No. 1-1 ¶ 21].  He sustained a cervical spinal cord stretch injury,
resulting in quadriplegia.  *Id.* ¶ 11.  The lower half of his body is completely paralyzed, and he has
diminished function in his upper extremities.  *Id.*  As a result of Oppedahl's injuries, the State of
Iowa has paid $1,372,861.51 in workers' compensation benefits and medical expenses, according
to a Notice of Lien included among the documents filed with the Notice of Removal.  [ECF No. 1-1
at 32].

III), and loss of parental consortium (Count IV).  *Id.* at 10–19.  Plaintiffs allege Defendant Mobile

Drill designed, manufactured, and sold the B47 drill that was mounted on the Navistar truck as part

of the drill-and-auger system.  *Id.* ¶ 5.  Against Mobile Drill, Plaintiffs assert the following causes

of action: strict products liability (Count V), negligence (Count VI), loss of spousal consortium

(Count VII), and loss of parental consortium (Count VIII).  *Id.* at 19–25.[7]  In addition, Plaintiffs

allege Mobile Drill was one of three consistent suppliers of augers to the State of Iowa.  *Id.* ¶ 6.

Plaintiffs allege Defendants Central Mine Equipment Company ("Central Mine") and

USExploration Equipment Company ("USExploration") were the two other consistent suppliers of

augers to the State of Iowa.  *Id.* ¶¶ 7–10.[8]  Against Mobile Drill, Central Mine, and USExploration,

Plaintiffs assert the following causes of action: enterprise liability—negligence (Count IX), loss of

spousal consortium (Count X), and loss of parental consortium (Count XI).  *Id.* at 25–30.  On

November 24, 2014, Navistar removed the case to this Court, properly invoking diversity

jurisdiction.  [Notice of Removal, ECF Nos. 51; 1].[9]

On December 1, 2014, Navistar filed its Motion, seeking dismissal of Counts I through IV.

[ECF Nos. 53; 6].  On December 31, Plaintiffs moved for an opportunity to conduct reasonable

---

[7] On December 31, 2014, Mobile Drill moved to dismiss Plaintiffs' claims against it under Federal Rule of Civil Procedure 12(b)(6).  [ECF Nos. 50; 31].  Plaintiffs resisted on January 20, 2015. [ECF No. 43; 67].  The Court will address this motion in a separate order.

[8] On December 22, 2014, Central Mine moved to dismiss Plaintiffs' claims against it under Federal Rule of Civil Procedure 12(b)(6).  [ECF Nos. 61; 24].  On the same date, USExploration joined in Central Mine's motion, though USExploration has not yet refiled this document using only the initials of minor children.  [ECF No. 25].  Plaintiffs resisted on January 8, 2015.  [ECF Nos. 35; 36; 65].  Central Mine replied on January 14, 2015.  [ECF Nos. 62; 40].  The Court will address this motion in a separate order.

[9] At the time of removal, Navistar had obtained consent to removal from Central Mine and USExploration.  [Notice of Removal, Exs. B, C].  Mobile Drill later filed its consent to removal. [ECF No. 14].

discovery before the Court ruled on Navistar's Motion. [ECF Nos. 33; 64].  Navistar resisted.  [ECF

No. 38].[10]  A hearing on Plaintiffs' discovery motion was held before the Chief Magistrate Judge

Celeste F. Bremer on January 14, 2015.  [*See* ECF No. 41].  The next day, Judge Bremer denied

Plaintiffs' motion, concluding Plaintiffs failed to show they were unable to present facts essential

to justify their opposition to Navistar's Motion. [ECF No. 42].  This denial was not appealed to the

district court.

## IV.  DISCUSSION

Navistar makes two arguments for dismissing Plaintiff Jeffery Oppedahl's strict liability and

negligence claims in Counts I and II.  First, Navistar argues they are barred by Iowa's statute of

repose for products-liability actions.  [Def.'s Br. at 6].  Second, Navistar argues the strict liability

and negligence claims fail as a matter of law.  *Id.* at 7.  Because the claims are barred or fail,

Navistar insists, Plaintiffs' loss of consortium claims in Counts III and IV must be dismissed,

because they derive from the strict liability and negligence claims. *Id.* at 11.  Plaintiffs counter these

arguments.  [Pls.' Br. at 10–11, 16].  Because the Court finds Navistar is entitled to summary

judgment on Counts I and II on the basis of its first argument, it does not address the second

argument as to those counts.  From that conclusion, it follows that Navistar is entitled to summary

judgment on Counts III and IV as well.  Plaintiffs and Navistar agree Iowa substantive law governs

this diversity case.

---

[10] Navistar has not yet refiled this document using only the initials of minor children.

*A. Statute of Repose*

Navistar argues Iowa's statute of repose for products-liability actions bars the strict liability

and negligence claims.  Statutes of repose are often explained by comparing them with statutes of

limitations.  *See, e.g.*, *Estate of Ryan v. Heritage Trails Assocs., Inc.*, 745 N.W.2d 724, 728 (Iowa

2008) ("Although a statute of limitations and a statute of repose may have a similar effect on a cause

of action, they are different animals.").  The two types of statutes are similar but not identical.  A

statute of limitations bars "the right to prosecute an accrued cause of action" after a period of time.

*Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408 (Iowa

1993).  In contrast, "a statute of repose 'terminates any right of action after a specified time has

elapsed,'" regardless whether there has been an injury.  *Id.* (quoting *Hanson v. Williams Cnty.*, 389

N.W.2d 319, 321 (N.D. 1986)).  The two statutes also run from different dates:  "[A] statute of

limitations runs from the accrual of a cause of action, whereas a statute of repose runs from a

different, earlier date typically related to an act of the defendant."  *Albrecht v. General Motors

Corp.*, 648 N.W.2d 87, 90 (Iowa 2002).

Legislatures enact statutes of repose to prevent suits against potential defendants after the

passage of time.  Statutes of repose "'reflect the legislative conclusion that a point in time arrives

beyond which a potential defendant should be immune from liability for past conduct.'"  *Id.* (quoting

51 Am. Jur. 2d *Limitation of Actions* § 18, at 463).  To that end, Iowa's statute of repose provides:

> [Actions] founded on . . . injuries to the person . . . brought against
> the manufacturer, assembler, designer, supplier of specifications,
> seller, lessor, or distributor of a product based upon an alleged defect
> in the design, inspection, testing, manufacturing, formulation,
> marketing, packaging, warning, labeling of the product, or any other
> alleged defect or failure of whatever nature or kind, based on the
> theories of strict liability in tort [or] negligence . . . shall not be

> commenced more than fifteen years after the product was first
> purchased, leased, bailed, or installed for use or consumption . . . .

Iowa Code § 614.1(2A)(a).  "The purpose of section 614.1(2A)(a) was to provide a manufacturer,

assembler, designer, supplier of specifications, seller, lessor, or distributor of a product with freedom

from liability after the passage of fifteen years." *Estate of Ryan*, 745 N.W.2d at 731; *see Albrecht*,

648 N.W.2d at 94 ("[S]ection 614.1(2A)(a) . . . reflects a legislative policy decision to close the door

after fifteen years on certain product claims." (internal quotation marks omitted)); *cf. United States*

*v. Kubrick*, 444 U.S. 111, 117 (1979) (explaining statutes of repose "protect defendants and the

courts from having to deal with cases in which the search for truth may be seriously impaired by the

loss of evidence").

## 1.  The Arguments

Plaintiffs do not dispute that the claims in Counts I and II fall within the statute of repose's

scope.  Instead, the parties dispute the event that triggers the beginning of the fifteen-year period.

The statute of repose prevents actions from being commenced "more than fifteen years after the

product was first purchased, leased, bailed, or installed for use or consumption."  Iowa Code

§ 614.1(2A)(a).  Neither party argues the fifteen-year period was triggered when the Navistar truck

was leased or bailed; they disagree about whether it was triggered when the truck was  purchased

or when it was installed.  The difference is between Plaintiffs' claims being timely and Plaintiffs'

claims being barred.

Navistar argues the truck's purchase was the trigger.  [Def.'s Br. at 6].  There is no dispute

that Navistar manufactured in part and assembled the truck; there is no dispute that IDOT had

purchased the truck by July 31, 1998;[11] and there is no dispute that Plaintiffs' state court Petition was

filed on August 5, 2014.  Thus, argues Navistar, the statute of repose was triggered when IDOT

purchased the truck, by at least July 31, 1998.  *See Hamilton v. Werner Co.*, 268 F. Supp. 2d 1085,

1091 (S.D. Iowa 2003) (concluding that when the statute of repose is triggered by a purchase, "the

starting point of the repose period [is] the point at which the product is effectively acquired by the

first user or consumer").  Because this action was commenced more than fifteen years afterward, the

statute of repose bars it, Navistar reasons.  *See* Iowa Code § 614.1(2A)(a); *Estate of Ryan*, 745

N.W.2d at 729 ("After the expiration of fifteen years, the repose period begins."); *Albrecht*, 648

N.W.2d at 89 (observing the statute of repose generally "requires that any products liability claim

be brought with fifteen years of the product's initial purchase").

---

[11] Navistar asserts the truck was first purchased by IDOT on or before July 22, 1998. [Def.'s Br. at 6; Def.'s App. at 6–7].  Plaintiffs did not respond to Navistar's statement of uncontroverted facts.  Under Local Rule 56.b, "[t]he failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact."  LR 56.b; *see also* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").  In their Brief, however, Plaintiffs assert the truck "was acquired on July 30, 1998." [Pls.' Br. at 4].  Their Appendix supports this assertion. [Pls.' App., ECF No. 32-2 at 2].  So although Plaintiffs did not technically comply with Local Rule 56.b, the Court treats Plaintiffs' assertion of the date on which the truck was acquired as a dispute of Navistar's asserted purchase date.  Viewing the facts in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, then, there is no dispute that the truck had been purchased by July 31, 1998.

Without disputing that the truck was purchased within the meaning of the statute of repose,[12] Plaintiffs disagree the truck's purchase triggered it.  They argue the statute of repose was instead triggered when the truck was "installed for use or consumption."  Iowa Code § 614.1(2A)(a); [Pls.' Br. at 11].  They insist the phrase means "put into operation or service," thus seemingly contending the statute of repose was triggered when the truck was first used.  [Pls.' Br. at 10–11].  Although IDOT undisputedly received the truck in July 1998, the B47 drill and the auger were not mounted on it until August 1999.  Still, IDOT records indicate the truck was not used until even later, sometime in October 2000.  Thus, if, as Plaintiffs argue, "installed for use or consumption" means "put into operation or service" and if the fifteen-year period was not triggered until October 2000, the statute of repose does not bar the strict liability and negligence claims.

## 2. Issues

These arguments raise multiple issues.  First, the Court must ascertain the meaning of "installed for use or consumption" in the statute of repose, Iowa Code § 614.1(2A)(a).  The Court must then decide whether the phrase "installed for use or consumption," as interpreted, could reasonably refer to a truck, such that a truck's being installed could trigger the fifteen-year period.

---

[12] Nor could they dispute that the truck was "purchased" within the statute's meaning. Citing dictionaries for the word's ordinary meaning, as Iowa courts do, numerous courts have concluded "purchase" means obtain for money, or simply, buy.  The United States Court of Appeals for the First Circuit found the *Oxford English Dictionary* defined purchase as "'[t]o acquire by the payment of money or its equivalent; buying'" and also appended a note to the definition "stating that this is '[n]ow the chief sense' in which the word is used." *Genzyme Corp. v. Fed. Ins. Co.*, 622 F.3d 62, 72 (1st Cir. 2010) (quoting *Oxford English Dictionary* 860 (2d ed. 1989)).  In the same case, the district court had consulted another dictionary and found it defined "'purchase'" as "'acquisition by the payment of money or its equivalent; buying.'" *Genzyme Corp. v. Fed. Ins. Co.*, 657 F. Supp. 2d 282, 292–93 (D. Mass. 2009) (quoting *Random House Unabridged Dictionary* 1568–69 (2d ed. 1993)).  A Pennsylvania federal court found the common meaning of purchase was "'[t]o obtain in exchange for money or its equivalent: BUY.'" *Gottlieb v. Tropicana Hotel & Casino*, 109 F. Supp. 2d 324, 331 (E.D. Pa. 2000) (quoting *Webster's II New College Dictionary* 899 (1995)).

If so, the Court must then determine which event—the truck's purchase or its installation—triggered

the statute of repose. If not, the truck's purchase triggered the statute of repose. No Iowa court

appears to have addressed these questions. *Cf. Albrecht*, 648 N.W.2d at 92 ("[T]he period

established in section 614.1(2A)(a) . . . runs from the date the product was first purchased or

installed for use.").[13]

### 3.  Iowa's Statutory Interpretation Principles

When interpreting a statute, Iowa courts seek to discern the legislature's intent. *Schaefer*

*v. Putnam*, 841 N.W.2d 68, 75 (Iowa 2013). They begin at the statute's words. *State v. Nicoletto*,

845 N.W.2d 421, 426 (Iowa 2014), *superseded by statute*, 2014 Iowa Acts ch. 1114, § 1 (codified

at Iowa Code § 709.15(f)). If the legislature leaves a word undefined, Iowa courts turn to courts'

decisions, similar statutes, dictionary definitions, and common usage for a meaning. *Kay-Decker*

*v. Iowa State Bd. of Tax Review*, 857 N.W.2d 216, 223 (Iowa 2014). Iowa courts "give words in

statutes their common, ordinary meaning in the context within which they are used." *In re J.C.*, 857

N.W.2d 495, 500 (Iowa 2014). They "look no further than the language of the statute when it is

unambiguous," *Bank of America, N.A. v. Schulte*, 843 N.W.2d 876, 880 (Iowa 2014), because

"unambiguous statutory language is the strongest evidence of the legislature's intent." *In re J.C.*,

857 N.W.2d at 500. The Court concludes it need not look further here than the language of Iowa

Code § 614.1(2A)(a).

---

[13] In *Albrecht*, the Iowa Supreme Court held the statute of repose barred an action brought more than fifteen years after the product in question, a car, was purchased. 648 N.W.2d at 89, 95. The issue there, however, was not when the statute of repose was triggered for a car, but rather whether it was extended in favor of minors. *Id.* at 89. Thus, the Court does not read *Albrecht* as deciding when the statute of repose is triggered for a car. *Cf. Sherwin-Williams Co. v. Iowa Dept't of Revenue*, 789 N.W.2d 417, 427 (Iowa 2010) (discussing the Iowa Supreme Court's refusal to follow reasoning that is not outcome determinative).

4.  Analysis

The Iowa legislature did not define "installed for use or consumption," and no Iowa court

has either.  A magistrate judge of this Court, however, has concluded the modifying language "for

use or consumption" means the statute of repose is not triggered until the product is in a consumer's

hands.  *See Hamilton*, 268 F. Supp. 2d at 1091 ("[T]he starting point of the repose period [is] the

point at which the product is effectively acquired by the first user or consumer . . . .").  Neither party

challenges this sound, well-supported reasoning.  Thus, to ascertain the meaning of the phrase, the

Court need only ascertain the meaning of "installed" in Iowa Code § 614.1(2A)(a).

The Iowa Supreme Court has not given meaning to the word "installed" in the statute of

repose; however, the court has grappled with the word's meaning, albeit nearly one-hundred years

ago in a non-statutory case.  The whole controversy in *Bernstein v. Alcorn* "turn[ed] upon the proper

construction of the word 'install.'"  190 N.W. 975, 976 (Iowa 1922).  A subcontractor orally agreed

to supply furnaces and place them in three houses, and after finishing the job, he filed a mechanic's

lien and a supporting statement of account.  *Id.* at 975–76.  The statement of account said the

subcontractor had "[i]nstall[ed] one furnace."  *Id.* at 976.  In rejecting the principal contractor's

argument that "install" was not broad enough to cover the costs the subcontractor claimed, the Iowa

Supreme Court relied on a decision of the California Supreme Court, which in turn relied on a

dictionary's definition:

> "The words install and installation when applied to machinery, have
> a technical meaning and should be interpreted accordingly. . . .
> *Webster's New International Dictionary* gives these definitions:
> Install—to set up or fix in position for use or service; as to install a
> heating or lighting system."

*Id.* (quoting *Metzler v. Thye*, 124 P. 721, 722 (Cal. 1912)) (additional internal quotation marks omitted).  The apparent lone time the Iowa Supreme Court has given meaning to the word "install," *Bernstein* suggests its ordinary meaning is not "to put into operation or service."  *Bernstein* counsels instead the word means "to set up or fix in position for use or service."  *Id.* (internal citation and quotation marks omitted).

The search for the word's ordinary meaning cannot stop there, of course.  A broader survey of decisions shows other courts have given "install" a similar ordinary meaning to that given in *Bernstein*.  A federal district court in Virginia, for example, consulted a dictionary and concluded the plain meaning of "install" is "'[t]o place in a position for service or use.'"  *Shipbuilders Council of Am. v. U.S. Dep't of Homeland Sec.*, 770 F. Supp. 2d 793, 805 (E.D. Va. 2011) (quoting *Oxford English Dictionary* (2d ed. 1989)).  Other courts have similarly concluded "install" means something like "place, or fix in position, or set up for use."  *See, e.g.*, *Goodell v. ITT-Fed. Support Servs., Inc.*, 573 P.2d 1292, 1295 (Wash. 1978) ("'Install . . . to fix in position for use; as, we installed new light fixtures.'" (quoting *Webster's New Twentieth Century Dictionary* (2d ed. 1970))); *Cent. Maine Power Co. v. Johnson*, 263 A.2d 713, 715 (Me. 1970) ("*Webster's Third New International Dictionary* defines 'install' as 'to set up for use or service (the electrician installed the new fixtures).'"); *Sherwood Mechanical, Inc. v. Cal. Occupational Safety & Health Appeals Bd.*, DO65322, 2014 WL 6853885, at \*7 n.20 (Cal. Ct. App. Dec. 5, 2014) (unpublished) (consulting a dictionary and finding the common meaning of "install" is "'to set up for use or service <the electrician [install]ed the new fixtures> <had gas heating [install]ed >'" (quoting *Webster's Third New Int'l Dictionary* 1171 (2002))); *Veritas Operating Corp. v. Microsoft Corp.*, 2007 WL 6872747, at \*51 (W.D. Wash. May 29, 2007) (unpublished) (explaining a "general purpose dictionary"

illustrated install, as in "'had an exhaust fan [install]ed in the kitchen'" (quoting *Webster's Ninth New Collegiate Dictionary* (1989))). These decisions show several courts generally agree on the meaning of "install."

Indeed, they show more than general agreement among courts. When ascribing meaning to a statute's words, courts ordinarily consult more than one dictionary. *See, e.g.*, *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2002–03 (2012) (consulting nearly one dozen different dictionaries for the plain meaning of a statutory term). The sum of the cited decisions is a survey of numerous dictionaries. The cited dictionaries were published across a range of years, and not all were produced by the same publisher, yet they all contain similar definitions of "install." In short, a global definition of install has emerged across not only numerous decisions, but also numerous dictionaries. This weighs heavily in favor of concluding the ordinary meaning of "install" is not "put into operation or service." Like *Bernstein*, these cases and the dictionaries they cited support the conclusion "install" means "to place or to fix in position or set up for use."

Turning to dictionaries' definitions, this Court finds definitions of the word "install" similar to those found by other courts. According to the *Oxford English Dictionary*, "install" means "[t]o place (an apparatus, a system of ventilation, lighting, heating, or the like) in position for service or use." *Install Definition*, OED Online, http://www.oed.com/view/Entry/97023?rskey= Kn0f4G&result=2&isAdvanced=false#eid (last visited June 8, 2015). *Webster's Third New International Dictionary* defines "install" as "to set up for use or service," as in, for instance, "the electrician [install]ed new fixtures." *Webster's Third New International Dictionary, Unabridged* 1171 (2002); *see also Sherwood Mechanical*, 2014 WL 6853885, at *7 n.20 (finding the same

definition in the same dictionary). These dictionary definitions reinforce the conclusion "install" does not carry the meaning Plaintiffs urge.

To be sure, Plaintiffs cite an Iowa court's decision as support for their interpretation. In *Beverlin v. Balzer Bros.*, the Iowa Court of Appeals upheld a trial court's decision to deny a manufacturer's directed-verdict motion, holding "a fact issue was generated on the issue of when Balzer sold and installed the vat in question." No. 99-1903, 2001 WL 488091, at *1, *3 (Iowa Ct. App. May 9, 2001) (unpublished). Despite this holding, Plaintiffs cast *Beverlin* as a case about the meaning of "install." They note the intermediate appellate court sometimes interchanged "placed in service" with "install." *Id.* at *4. *But see id.* at *1 (noting it was argued that "the record conclusively establishes the vat in question was installed and placed in service"). Even so, *Beverlin* bears none of the markers of a statutory interpretation case. *Cf. Sherwin-Williams Co.*, 789 N.W.2d at 422 (rejecting an administrative definition of a statutory term because it did not "interpret" the term). After all, the court cited not a single statutory-interpretation rule, not a single court's definition of "install," not a single dictionary's definition. What's more, when the court quoted the statute, it did so in a footnote.

Based on a survey of courts' decisions and dictionaries, the Court concludes the ordinary meaning of "install" is not "to put into operation or service." Instead, "install" is ordinarily understood as meaning "to place or to fix in position or set up for use." As close as these competing meanings may be, the difference between them compels separate treatment in the context of statutes of repose. The latter emphasizes that install means to place *in position* or fix *in position* or set up, whereas the former does not. The question, then, is whether "install" in the statute of repose can reasonably be understood as applying to a truck, such that installation of a truck triggers it.

-16-

Ordinary usage confirms install cannot be so understood. As the cited dictionaries and cases attest, one installs light fixtures, electrical fixtures, appliances, furnaces, *Bernstein* 190 N.W. at 976, and potato-chip frying vats, *Beverlin*, 2001 WL 488091, at *1. In ordinary usage, a person does not install a car, *Albrecht*, 648 N.W.2d at 89. Nor would a person say she "installed" a truck. One does, however, purchase (that is, buy) extension ladders, *Hamilton*, 268 F. Supp. 2d at 1087, cars, and trucks. So for trucks, as for extension ladders, the fifteen-year period in the statute of repose begins running at purchase, not installation, by the first consumer. *See id.* at 1091 (denying motion for summary judgment because ladder was first purchased less than fifteen years before the action was brought). Because IDOT undisputedly had purchased the Navistar truck by July 31, 1998, and because this action was brought more than fifteen years afterward, the statute of repose bars the strict liability and negligence claims in Counts I and II. *See* Iowa Code § 614.1(2A)(a) (barring actions commenced "more than fifteen years after the product was first purchased . . . for use or consumption"); *Daughetee v. Chr. Hansen, Inc.*, 960 F. Supp. 2d 849, 878 (N.D. Iowa 2013) (concluding statute of repose barred claims). Summary judgment on both counts is thus appropriate.

### B.  Loss of Consortium Claims

Plaintiffs' state court Petition also contains claims for loss of consortium against Navistar. In Count III, Plaintiff Angela Oppedahl alleges a claim for loss of spousal consortium. In Count IV, on behalf of her three minor children, Angela Oppedahl alleges a claim for loss of parental consortium. Navistar argues the Court should dismiss these claims because Plaintiff Jeffery Oppedahl cannot recover on the strict liability and negligence claims.

Iowa law recognizes an injured party's children and spouse have causes of action for loss of consortium. *See Clark v. Estate of Rice ex rel. Rice*, 653 N.W.2d 166, 174 (Iowa 2002) ("We

recognize a child has a cause of action for loss of parental consortium and support for the death or injury of a parent by a third party."); *Madison v. Colby*, 348 N.W.2d 202, 209 (Iowa 1984) ("The deprived spouse, not the injured person, has the right to sue for and recover for the pre-death loss of consortium."). Unlike a claim for parental consortium, a claim for spousal consortium "is an independent, nonderivative claim." *Huber v. Hovey*, 501 N.W.2d 53, 57 (Iowa 1993); *see Clark*, 653 N.W.2d at 174 ("There is no independent cause of action for parental consortium."). Still, loss of consortium claims will be dismissed if the injured party cannot recover from the defendant on the underlying claims. *See Bergfeld v. Unimin Corp.*, 226 F. Supp. 2d 970, 983 (N.D. Iowa 2002) (Melloy, J., sitting by designation) (dismissing loss of spousal consortium claim after determining that defendant was not liable as a matter of law for failure to warn, strict liability, or negligence); *Wilkinson v. Jim Miller Nissan, Inc.*, No. C03-0022, 2005 WL 1211564, at *3, *5 (N.D. Iowa May 20, 2005) (unpublished) (dismissing loss of spousal consortium claim after dismissing negligence claim); *James v. Burlington N., Inc.*, 587 N.W.2d 462, 464–65 (Iowa 1998) (dismissing spousal and parental loss of consortium claims after holding defendant was not liable for negligence). Because the statute of repose bars the strict liability and negligence claims in Counts I and II, it follows the loss of consortium claims in Counts III and IV fail also. Summary judgment on Counts III and IV is thus appropriate.

## V. CONCLUSION

The Court concludes Iowa's statute of repose bars the negligence and strict liability claims in Counts I and II and thus Navistar is entitled to summary judgment on those counts. As a result, it follows the claims against Navistar is entitled to summary judgment on Counts III and IV also.

Consequently, Defendant Navistar's Motion [ECF Nos. 53; 6] is GRANTED.  Navistar, Inc. is

dismissed as a Defendant to this action.

IT IS SO ORDERED.

Dated this 9th day of June, 2015.

STEPHANIE M. ROSE
UNITED STATES DISTRICT JUDGE