IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| JEFFERY ALLEN OPPEDAHL, ANGELA MARIE OPPEDAHL, individually and as natural mother and next friend of W.T.O., M.J.O., and S.M.O., | ) ) ) ) ) | Case No. 4:14-cv-00475-SMR-CFB |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| MOBILE DRILL INTERNATIONAL, INC., also known as MOBILE DRILL, L.L.C., formerly known as MOBILE DRILL COMPANY, INC., a corporation; CENTRAL MINE EQUIPMENT COMPANY, a corporation; and USEXPLORATION EQUIPMENT COMPANY, a corporation, | ) ) ) ) ) ) ) ) ) | ORDER ON MOTIONS TO DISMISS |
| Defendants. | ) | |

Plaintiffs brought this action alleging Plaintiff Jeffery Allen Oppedahl was tragically injured when he became entangled in an unguarded auger at work. The alleged suppliers of the auger, the alleged manufacturer of the drill that drove the auger (which also is an alleged auger supplier), and the alleged manufacturer of the truck on which the auger and drill were mounted—the auger, the drill, and the truck together making up a drill-and-auger system—were all named Defendants. [Notice of Removal, Petition at Law and Jury Demand, ECF No. 1-1].[1] The Court previously granted summary judgment in favor of the truck's manufacturer, Navistar, Inc. ("Navistar") and

---

[1] On May 1, 2015, the Court entered an order directing all parties to refile all documents to comply with the Local Rules by using only the initials of minor children and directing the Clerk to seal all previously filed documents. [*See* ECF No. 46]. Docket citations in this Order are to those newly filed documents and to the now-sealed documents, unless otherwise noted.

dismissed it as a Defendant to this action.  [ECF No. 69].  All three remaining Defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the counts against them.

## I. PROCEDURAL BACKGROUND

On August 5, 2014, Plaintiffs filed an eleven-count Petition at Law and Jury Demand ("Petition") in Iowa state court.  [ECF No. 1-1 at 1].  Plaintiffs allege Defendant Mobile Drill International, Inc. ("Mobile Drill") designed, manufactured, and sold the B47 drill that was mounted on the truck as part of the drill-and-auger system. *Id.* ¶ 5.  Against Mobile Drill, Plaintiffs assert the following causes of action: strict products liability (Count V), negligence (Count VI), loss of spousal consortium (Count VII), and loss of parental consortium (Count VIII). *Id.* at 19–25.  Plaintiffs allege also that Mobile Drill was one of three consistent suppliers of augers to the Iowa Department of Transportation ("IDOT"), Plaintiff Jeffery Oppedahl's employer. *Id.* ¶ 6.  Plaintiffs allege Defendants Central Mine Equipment Company ("Central Mine") and USExploration Equipment Company ("USExploration") were the two other consistent suppliers of augers to the State of Iowa. *Id.* ¶¶ 8, 10.  Against Mobile Drill, Central Mine, and USExploration (collectively "Auger Defendants"), Plaintiffs assert the following causes of action: enterprise liability—negligence (Count IX), loss of spousal consortium (Count X), and loss of parental consortium (Count XI). *Id.* at 25–30.[2]  Plaintiffs allege the Auger Defendants were negligent in failing to warn of using the auger without a guard, in failing to communicate with the other component manufacturers to ensure a guard was incorporated in the system, or in selling augers for use in a drill-and-auger system

---

[2] Plaintiffs alleged Navistar manufactured and sold the truck that was a component of the drill-and-auger system that caused Oppedahl's injuries.  [ECF No. 1-1 ¶ 4].  Against Navistar, Plaintiffs asserted the following causes of action: strict products liability (Count I), negligence (Count II), loss of spousal consortium (Count III), and loss of parental consortium (Count IV). *Id.* at 10–19.  As noted above, the Court granted summary judgment in favor of Navistar and dismissed it from this action.  [ECF No. 69].

before assurances were made that safety components had been incorporated into the drill-and-auger system. *Id.* at 28 ¶ 13. On November 24, 2014, Navistar removed the case to this Court, properly invoking diversity jurisdiction. [Notice of Removal, ECF Nos. 51; 1].[3]

Central Mine moved to dismiss on December 22, 2014. [ECF Nos. 61; 24]. With its Motion, Central Mine filed a brief ("Central Mine's Brief"). [ECF Nos. 61-1; 24-1]. On the same date, USExploration joined in Central Mine's Motion, seeking dismissal of all counts against it. [ECF No. 25].[4] Plaintiffs resisted both Central Mine's Motion ("Plaintiffs' Response to Central Mine's Motion to Dismiss"), [ECF Nos. 65; 35], and USExplorations's joinder ("Plaintiffs' Response to USExploration's Joinder"), [ECF No. 36], on January 8, 2015. Central Mine replied ("Central Mine's Reply") on January 14, 2015. [ECF Nos. 62; 40].

Mobile Drill moved to dismiss on December 31, 2014. [ECF Nos. 50; 31]. Mobile Drill also filed a brief ("Mobile Drill's Brief"). [ECF Nos. 50-1; 31-1]. Plaintiffs resisted ("Plaintiffs' Response to Mobile Drill's Motion to Dismiss") on January 20, 2015. [ECF Nos. 67; 43].[5] Oral argument was not requested on any of the motions. The matters are submitted.

---

[3] At the time of removal, Navistar had obtained consent to removal from Central Mine and USExploration. [Notice of Removal at 2–3, Exs. B, C]. Mobile Drill later filed its consent to removal. [ECF No. 14].

[4] USExploration has not yet refiled this document using only the initials of minor children.

[5] With their responses to Auger Defendants' motions, Plaintiffs submitted several matters outside the pleadings, including, in one response, an Affidavit. [*See* ECF Nos. 67-2; 43-2]. The Court has not relied on these documents in considering Mobile Drill's Motion to Dismiss, Central Mine's Motion to Dismiss, or USExploration's Joinder in Motion to Dismiss. *See Casazza v. Kiser*, 313 F.3d 414, 418 (8th Cir. 2002) ("[A] district court does not convert a motion to dismiss into a motion for summary judgment when it does not rely upon an affidavit in dismissing a claim, or when the district court makes clear that it ruled only on the motion to dismiss." (internal citations omitted)).

## II.  STANDARD OF REVIEW

Rule 12(b)(6) provides a motion to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet this standard, and thus survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although the plausibility standard "is not akin to a 'probability requirement,'" it does demand "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Several principles guide courts assessing whether a complaint states a plausible claim for relief.  *Braden*, 588 F.3d at 594.  Courts must accept as true a plaintiff's factual allegations, but they need not accept as true a plaintiff's legal conclusions.  *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010).  They must draw all reasonable inferences in favor of plaintiffs.  *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Still more principles guide courts.  They may look to documents attached to or incorporated within a complaint "to determine whether a plaintiff has stated a plausible claim."  *Brown*, 628 F.3d at 459–60.  And instead of parsing complaints to determine whether isolated allegations are plausible, courts should read complaints as a whole.  *Braden*, 588 F.3d at 594.  After all, evaluating

a complaint "is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Consistent with these principles, the Supreme Court of the United States has developed a two-pronged approach for deciding whether a complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 679. First, courts should begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* After disregarding these conclusions, they should assume the veracity of the remaining factual allegations and "determine whether they plausibly give rise to an entitlement to relief." *Id.* "The facts alleged in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)).

## III. FACTS

The Court accepts the following relevant allegations as true. Plaintiff Jeffery Oppedahl began working for IDOT in November 2007. [ECF No. 1-1 ¶¶ 1, 12]. At the time relevant to this action, he was a member of the soil crew, the "soils party chief." *Id.* Plaintiff Angela Oppedahl is Jeffery's spouse. *Id.* ¶ 2. Angela is named in her capacity as Jeffery's spouse and in her capacity as natural mother and next best friend of the couple's three minor children: W.T.O., M.J.O., and S.M.O. *Id.* ¶¶ 2–3.

On or about January 16, 2013, Jeffery was working for IDOT, taking soil samples near a planned road and bridge project in Sac County, Iowa. *Id.* ¶¶ 11, 13, 22. Jeffery and his co-workers were using a drill-and-auger system consisting of three necessary components: a 1998 International 4000 4x4 truck manufactured by Navistar, a B47 drill manufactured by Mobile Drill, and an auger

supplied by Mobile Drill, Central Mine, or USExploration. *Id.* ¶¶ 13, 17, 18. It was cold outside, so Jeffery was wearing outerwear. *Id.* ¶ 14. He wore a fluorescent vest atop his outerwear. *Id.*

Jeffery was operating the drill-and-auger system, which had no guard. *Id.* ¶ 15. No remote control was available to operate the system, so Jeffery had to remain close to the rotating auger to perform his work. *Id.* ¶ 16. Jeffery has no memory of what happened that day, but it is believed he was located on or near an operator's platform near the auger. *Id.* ¶ 15.

At some point, Jeffery's arm or clothing became entangled in the unguarded, rotating auger. *Id.* ¶¶ 11, 21. He became pinned between the auger and the drill's supports. *Id.* ¶ 21. His neck was fractured, causing a cervical spinal cord stretch injury resulting in quadriplegia. *Id.* ¶¶ 21, 11. Following his injury, Jeffery was taken for acute treatment to a local hospital and later to another hospital. *Id.* ¶ 22. Following treatment there, he was transferred to a rehabilitation facility in Nebraska. *Id.* ¶ 23. He returned home in May 2013. *Id.*

The injury left the lower half of Jeffery's body completely paralyzed and caused diminished function in his upper extremities. *Id.* ¶ 11. Tethering of his spinal cord since the injury has further diminished function in his hands and fingers, and surgery has been necessary to preserve what function he still has in his hands. *Id.* Jeffery will never return to employment that is the same as or similar to that in which he engaged before his injury. *Id.* ¶ 24.[6]

Mobile Drill designed, manufactured, and sold to the State of Iowa the B47 drill (identification number 89165) that Jeffery was operating the day he was injured. *Id.* ¶¶ 5, 17–19. The drill was first put into operation on April 1, 1990, when it was mounted on a Ford truck. *Id.* ¶ 5.

---

[6] As a result of Jeffery's injuries, the State of Iowa has paid $1,372,861.51 in workers' compensation benefits and medical expenses, according to a Notice of Lien included among the documents filed with the Notice of Removal. [ECF No. 1-1 at 32].

Sometime in 1999, the drill was dismantled and remounted on the Navistar truck by an IDOT worker. *Id.* ¶¶ 5, 19. The drill-and-auger-system, without a guard around the auger, was put back into operation on or after August 5, 1999. *Id.* ¶ 5. It may not have gone into service until as late as October 2000, however. *Id.* ¶ 19.

One of three entities supplied IDOT with the auger that Jeffery was using: Mobile Drill, Central Mine, or USExploration. *Id.* at 26 ¶ 6, ¶ 17A. Each is alleged to have supplied IDOT with augers on one or more of the following dates: March 22, 2012; May 27, 2010; March 25, 2009; June 6, 2008; or June 26, 2005. *Id.* ¶¶ 6, 17A. Despite diligent effort, which has included inquiring with IDOT, Plaintiffs have been unable to identify the manufacturer of the particular auger being used when Jeffery was injured. *Id.* at 26 ¶¶ 4–5, 27 ¶ 11.

## IV. DISCUSSION

To recap: Mobile Drill is alleged to have supplied IDOT with the drill, and Counts V through VIII are based on that conduct. [ECF No. 1-1 at 19–25]. Plaintiffs do not identify which one entity supplied IDOT with the auger; instead, they allege either Mobile Drill, Central Mine, or USExploration did so. Counts IX through XI are based on this conduct. *Id.* at 25–30. The parties agree Iowa substantive law governs this diversity case.

### A. *Mobile Drill's Motion to Dismiss Counts V through VIII*

#### 1. Counts V and VI

Mobile Drill argues Iowa's fifteen-year statute of repose for products-liability actions bars Plaintiffs' claims based on the B47 drill. [Mobile Drill's Br. at 3–4]. It notes Plaintiffs' Petition concedes the drill was first put into operation on April 1, 1990, and thus contends the statute of

repose expired on April 1, 2005. *Id.* at 4. Plaintiffs filed this action on August 5, 2014. [ECF No. 1-1 at 1]. Therefore, Mobile Drill reasons, they filed it too late. [Mobile Drill's Br. at 4].

Plaintiffs argue the statute of repose begins anew when a product is refurbished and reinstalled. [Pls.' Resp. to Mobile Drill's Mot. to Dismiss at 5]. After spending years on a different truck, the B47 was refurbished and reinstalled on the Navistar truck on August 5, 1999, they explain. *Id.* at 3–4. Thus, Plaintiffs insist, because the statute of repose began anew on August 5, 1999, and because this action was filed on August 5, 2014, the statute of repose is not a bar. *Id.* at 8.

As the Court noted in its Order granting Navistar's Motion for Summary Judgment, [ECF No. 69 at 7], statutes of repose are often explained by comparing them with statutes of limitations. *See, e.g.*, *Estate of Ryan v. Heritage Trails Assocs., Inc.*, 745 N.W.2d 724, 728 (Iowa 2008) ("Although a statute of limitations and a statute of repose may have a similar effect on a cause of action, they are different animals."). The two types of statutes are similar but not identical. A statute of limitations bars "the right to prosecute an accrued cause of action" after a period of time. *Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408 (Iowa 1993). In contrast, "a statute of repose 'terminates any right of action after a specified time has elapsed,'" regardless whether there has been an injury. *Id.* (quoting *Hanson v. Williams County*, 389 N.W.2d 319, 321 (N.D. 1986)). The two statutes also run from different dates: "[A] statute of limitations runs from the accrual of a cause of action, whereas a statute of repose runs from a different, earlier date typically related to an act of the defendant." *Albrecht v. General Motors Corp.*, 648 N.W.2d 87, 90 (Iowa 2002). Under Iowa's statute of repose for products-liability actions,

> [Actions] founded on . . . injuries to the person . . . brought against
> the manufacturer, assembler, designer, supplier of specifications,

-8-

> seller, lessor, or distributor of a product based upon an alleged defect in the design, inspection, testing, manufacturing, formulation, marketing, packaging, warning, labeling of the product, or any other alleged defect or failure of whatever nature or kind, based on the theories of strict liability in tort [or] negligence . . . shall not be commenced more than fifteen years after the product was first purchased, leased, bailed, or installed for use or consumption . . . .

Iowa Code § 614.1(2A)(a).

The question whether this statute begins anew when a product is refurbished has not been addressed by the Iowa Supreme Court, but another judge of this court has addressed it.  In *Alley v. Johnson & Johnson*, the plaintiff was injured by an air drill that malfunctioned while she was undergoing surgery.  No. 1:02-CV-40043, 2004 WL 180256, at *1 (S.D. Iowa Jan. 5, 2004).  She sued in 2002, and the defendants raised the statute of repose, arguing the action was barred because the drill was in use by at least 1984.  *Id.*  Countering, the plaintiff insisted the statute recommenced when the air drill was refurbished in 1993.  *Id.*  Informed by plain text and statutory purpose, Judge Gritzner declined to adopt the plaintiff's argument, finding "no basis upon which to conclude the Iowa Supreme Court would create" such a refurbishment exception.  *Id.* at *5.

Like the plaintiff in *Alley*, Plaintiffs insist refurbishment restarts the statute of repose, but they offer no persuasive reason for revisiting the case's conclusion.   They recycle without repackaging five non-binding cases rejected there.  *Compare id.* at *3–4 (citing *Richardson v. Gallo Equip. Corp.*, 990 F.2d 330 (7th Cir. 1993); *Hinds v. CompAir Kellogg*, 776 F. Supp. 1102 (E.D. Va. 1991), *aff'd*, 961 F.2d 211 (4th Cir. 1992); *Fugate v. AAA Mach. & Equip. Co.*, 593 F. Supp. 392 (E.D. Tenn. 1984); *Miller v. Honeywell*, *Int'l Inc.*, No. IP98–1742–C–M/S, 2001 WL 395149 (S.D. Ind. Mar. 7, 2001); *Divis v. Clarklift of Neb.*, 590 N.W.2d 696 (Neb. 1999)), *with* [Pls.' Resp. to Mobile Drill's Mot. to Dismiss at 5–6, 7–8 (same)].  In the lone new case Plaintiffs cite, *Rollins*

*v. Cherokee Warehouse, Inc.*, the federal district court relied heavily on the rule of its earlier decision in *Fugate*, one of the non-binding cases rejected in *Alley*. *See* 635 F. Supp 136, 138 (E.D. Tenn. 1986) (stating rule).  As these citations suggest, Plaintiffs cite no subsequent change in Iowa law suggesting *Alley* was wrongly decided.  *Cf. Klinge v. Bentien*, 725 N.W.2d 13, 17–18 (Iowa 2006) (concluding the Iowa legislature amended statute to overrule a federal district court's interpretation of it); *Flood v. Kuhn*, 407 U.S. 258, 279, 284 (1972) (reasoning the Supreme Court would adhere to previous decisions in light of Congress's apparent acquiescence to them); *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 488 (1940) (finding Congress's failure to alter the Sherman Act after the Supreme Court interpreted it to be "persuasive of legislative recognition that the judicial construction is the correct one").  The statute persists unchanged over a decade later.

If anything, time has suggested *Alley* is correct.  Four years after the decision, statutory purpose informed the Iowa Supreme Court's resolution of a statute-of-repose issue, as it had Judge Gritzner in *Alley*.  *Compare Estate of Ryan*, 745 N.W.2d at 731 (discussing the statute's purpose), *with Alley*, 2004 WL 180256, at *5 (discussing the statute's purpose).  In *Estate of Ryan*, a manufacturer was found to be protected by the statute of repose, meaning it did not have common liability with four other defendants, a requirement for a contribution claim.  745 N.W.2d at 730–31. Determined to obtain contribution from the manufacturer, the four other defendants argued an express exception in the statute of repose eliminated the commonality requirement for contribution claims in products-liability actions.  *Id.* at 731.  The court disagreed, emphasizing that the statute of repose's purpose is "to provide a manufacturer, assembler, designer, supplier of specifications, seller, lessor, or distributor of a product with freedom from liability after the passage of fifteen years."  *Id.*; *see also Albrecht*, 648 N.W.2d at 94 ("[S]ection 614.1(2A)(a) . . . reflects a legislative

policy decision to close the door after fifteen years on certain product claims." (internal quotation marks omitted)).   Naturally, then, it declined to subvert this purpose "by making persons protected by the statute of repose liable for their products during the repose period."   *Estate of Ryan*, 745 N.W.2d at 731.   This purpose would have likewise been subverted if *Alley* had created the refurbishment exception.   But it did not, and *Estate of Ryan* suggests that was correct.

The Court finds no reason to believe the Iowa Supreme Court would create the refurbishment exception.   Because no exception applies, the statute of repose bars Plaintiffs' claims based on the B47 drill.   Taking the allegations in the Petition as true, it shows the B47 drill was first installed or purchased by April 1, 1990.   [ECF No. 1-1 ¶ 5].   Plaintiffs commenced this action on August 5, 2014—more than twenty-four years later.   *Id.*   Thus, Iowa Code § 614.1(2A)(a) bars Plaintiff Jeffery Oppedahl's claims in Counts V and VI.   *See* Iowa Code § 614.1(2A)(a) (barring actions "commenced more than fifteen years after the product was first purchased . . . or installed for use or consumption"); *Daughetee v. Chr. Hansen, Inc.*, 960 F. Supp. 2d 849, 878 (N.D. Iowa 2013) (finding a specific exception to the statute inapplicable and thus concluding statute of repose barred claims).   Because the Petition establishes that the claims in Counts V and VI are barred, dismissal of both counts is appropriate under Rule 12(b)(6).   *See Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) ("A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred."); *see also Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) ("Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate."); *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 904 (6th Cir. 2002) (holding statute of repose could be raised by 12(b)(6) motion); *Dekalb Cnty. Pension Fund v.*

*Transocean Ltd.*, 36 F. Supp. 3d 279, 285–86 (S.D.N.Y. 2014) (granting 12(b)(6) motion because statute of repose barred claim).

## 2.  Counts VII and VIII

Dismissal of Counts V and VI means the loss of consortium claims in Counts VII and VIII must be dismissed also.  As the Court previously noted, [ECF No. 69 at 17],  Iowa law recognizes an injured party's children and spouse have causes of action for loss of consortium.  *See Clark v. Estate of Rice ex rel. Rice*, 653 N.W.2d 166, 174 (Iowa 2002) ("We recognize a child has a cause of action for loss of parental consortium and support for the death or injury of a parent by a third party."); *Madison v. Colby*, 348 N.W.2d 202, 209 (Iowa 1984) ("The deprived spouse, not the injured person, has the right to sue for and recover for the pre-death loss of consortium.").  Unlike a claim for parental consortium, a claim for spousal consortium "is an independent, nonderivative claim."  *Huber v. Hovey*, 501 N.W.2d 53, 57 (Iowa 1993); *see Clark*, 653 N.W.2d at 174 ("There is no independent cause of action for parental consortium.").  Still, loss of consortium claims will be dismissed if the injured party cannot recover from the defendant on the underlying claims.  *See Bergfeld v. Unimin Corp.*, 226 F. Supp. 2d 970, 983 (N.D. Iowa 2002) (Melloy, J., sitting by designation) (dismissing loss of spousal consortium claim after determining that defendant was not liable  as a matter of law for failure to warn, strict liability, or negligence); *Wilkinson v. Jim Miller Nissan, Inc.*, No. C03-0022, 2005 WL 1211564, at *3, *5 (N.D. Iowa May 20, 2005) (unpublished) (dismissing loss of spousal consortium claim after dismissing negligence claim); *James v. Burlington N., Inc.*, 587 N.W.2d 462, 464–65 (Iowa 1998) (dismissing spousal and parental loss of consortium claims after holding defendant was not liable for negligence).  Thus, because the statute

of repose bars the strict liability and negligence claims in Counts V and VI, dismissal of the loss of consortium claims in Counts VII and VIII is appropriate also.

### B.  The Motions to Dismiss Counts IX through XI

Mobile Drill argues Plaintiffs' Counts IX through XI should be dismissed also. [Mobile Drill's Br. at 4–5].  Central Mine, and USExploration by joinder, likewise argue these counts should be dismissed.  [Central Mine's Br. at 5–6; ECF No. 25].  They all contend Iowa law does not recognize the enterprise liability theory upon which Count IX is based.  [Mobile Drill's Br. at 4–5; Central Mine's Br. at 5–6].  And even if it were recognized, they insist, the theory does not apply here.  [Mobile Drill's Br. at 6–7; Central Mine's Br. at 7–9].  Thus, they reason, Count IX should be dismissed, as should the loss consortium claims in Counts X and XI.

In response, Plaintiffs, who concede their Petition expressly mentions enterprise liability, argue another theory of liability applies here, even though their Petition does not mention it.  [Pls.' Resp. to Mobile Drill's Mot. to Dismiss at 12].[7]  They maintain the alternative liability theory applies, noting that like the enterprise liability theory, the Iowa Supreme Court has never ruled it out.  *Id.* at 11.  They contend they have alleged sufficient facts to support negligence under the alternative liability theory, so the Motions to Dismiss should be denied.  *Id.* at 12.

The Iowa Supreme Court has neither adopted nor rejected either the enterprise liability theory or the alternative theory.  The court considered whether to adopt the two theories (and another), however, in *Mulcahy v. Eli Lilly & Co.*, 386 N.W.2d 67 (1986), a case before it on certified questions from the United States District Court for the Northern District of Iowa.  *Id.* at 69.  In

---

[7] Plaintiffs raise this argument in all their responses.  [*See* Pls.' Resp. to Mobile Drill's Mot. to Dismiss at 12; Pls.' Resp. to Central Mine's Mot. to Dismiss at 8; Pls.' Resp. to USExploration's Joinder in Mot. to Dismiss at 8].  Because the arguments are substantially the same in all three responses, the Court will cite only one response.

*Mulcahy*, a woman alleged she was exposed *in utero* to a synthetic estrogen compound known as DES. *Id.* Decades later, she gave birth to her own children prematurely, and they suffered injuries as a result. *Id.* The woman and her husband filed suit against 25 companies alleged to have manufactured and marketed DES. *Id.* Despite extensive discovery, the plaintiffs could not identify which company manufactured or marketed the particular DES the woman was exposed to. *Id.* at 70. The plaintiffs, unable to identify the product's specific manufacturer, sought to use theories of liability that would shift the burden of proof on causation to product manufacturers: the enterprise liability theory and the alternative liability theory. *Id.* at 69, 70.[8] Although the Iowa Supreme Court ultimately declined to adopt either theory on the facts before it, the court's discussion of the theories is instructive here.

### 1.  Enterprise liability

*Mulcahy* started with enterprise liability. *Id.* at 70. It explained enterprise liability avoids the causation problem arising from a plaintiff's inability to identify the injury-causing product's manufacturer. *Id.* at 72. It does so, the court added, "by shifting responsibility to the industry for causing the injury because of the concert of action by manufacturers of such products through their trade associations or their collective action." *Id.* Enterprise liability is established when

> (1) The injury-causing product was manufactured by one of a small number of defendants in an industry; (2) the defendants had joint knowledge of the risks inherent in the product and possessed a joint capacity to reduce those risks; and (3) each of them failed to take steps to reduce the risk but, rather, delegated this responsibility to a trade association.

---

[8] A third theory the plaintiffs in *Mulcahy* sought to use, the market share liability theory, is not asserted here. *See* 386 N.W.2d at 74 (discussing market share theory).

*Id.* at 71 (quoting *Burnside v. Abbott Labs.*, 505 A.2d 973, 984 (Pa. Super. 1985)).  Turning to the facts before it, the court found the plaintiffs failed to establish the first criterion.  *Id.*   They had named 25 companies as defendants, and the court believed this number was not "small."  *Id.*  The court held the facts "inappropriate for application of enterprise liability," without dismissing the possibility of later adopting the enterprise liability theory.  *Id.* at 72.

Auger Defendants argue Iowa would not adopt enterprise liability.  [Mobile Drill's Br. at 6–7; Central Mine's Br. at 7–9].  The Court, however, concludes it need not decide whether Iowa would adopt the theory because, as in *Mulcahy*, the facts alleged here are inappropriate for the theory.  To be sure, unlike in *Mulcahy*, Plaintiffs' Petition does not name too many defendants.  It names each of the three Auger Defendants and alleges each is part of a small number of manufacturers in the industry producing augers.  [ECF No. 1-1 at 27 ¶ 8].  But even so, it fails to plead facts plausibly supporting the second criterion.  Although the Petition alleges Auger Defendants had joint knowledge of the auger's inherent risks, it pleads no facts plausibly supporting this bare assertion.  *See Christiansen v. West Branch Cmty. Sch. Dist.*, 674 F.3d 927, 936 (8th Cir. 2012) ("[N]aked assertion[s] without factual enhancement are insufficient to state a plausible claim for relief." (internal citation and quotation marks omitted)).  As *Mulcahy* emphasized, enterprise liability is appropriate when manufacturers jointly control the risk presented by their industry.  *See* 386 N.W.2d at 71 (explaining the importance of joint control of risk in the seminal enterprise liability case).  Plaintiffs' Petition pleads no facts suggesting Auger Defendants jointly controlled their industry's risks.

Nor does it plead facts supporting the third criterion.  *Mulcahy* observed that enterprise liability requires "'industry-wide delegation of safety functions'" to an industry or trade association.

*Id.* at 71 (quoting *Morton v. Abbott Labs.*, 538 F. Supp. 593, 598 (M.D. Fla. 1982)).  The Petition contains no more than a conclusory allegation that Auger Defendants delegated responsibility for risks to other manufacturers.  [*See* ECF No. 1-1 at 27 ¶ 10].  In sum, the Petition contains insufficient factual content to state a claim for enterprise liability.  Dismissal of Count IX, to the extent it relies on enterprise liability, is therefore appropriate.  *See City of Phila. v. Lead Indus. Assoc., Inc.*, 994 F.2d 112, 129 (3d Cir. 1993) (affirming dismissal of action relying on enterprise liability); *Hurt v. Phila. Housing Auth.*, 806 F. Supp. 515, 537 (E.D. Pa. 1992) (granting motion to dismiss claim brought on enterprise liability theory); *Lillege v. Johns-Manville Corp.*, 602 F. Supp. 855, 856 (E.D. Wis. 1985) (same).

## 2.  Alternative Liability

As noted above, however, Plaintiffs insist the alternative liability theory applies here.  [Pls.' Resp. to Mobile Drill's Mot. to Dismiss at 12].  Central Mine disagrees.  It argues that, like the enterprise liability theory, the alternative liability theory has not been recognized in Iowa.  [Central Mine's Reply at 1].  Even if it were recognized, Central Mine adds, Plaintiffs have failed to satisfy its requirements.  *Id.* at 2.

After concluding its analysis of enterprise liability, *Mulcahy* addressed alternative liability, describing first the problem the theory seeks to solve.  A plaintiff in a tort case must generally prove by a preponderance of the evidence the defendant caused the injury complained of.  *Mulcahy*, 386 N.W.2d at 72.  This means showing the defendant manufactured the product.  *See id.* ("The causation requirement necessarily involves two links in a case of this kind: first, that the defendant manufactured the DES ingested by the mother in question . . . .").  But in some cases, such as DES cases, identifying the product's manufacturer is difficult, the court observed.  *See id.* at 72 (noting

the problem before the court was "the identification requirement" (internal citation and quotation marks omitted)).  The alternative liability theory tries to solve that problem.  *Id.* at 73.

Under the alternative liability theory, the burden of proving causation shifts to the defendants because of uncertainty as to which of them caused the plaintiff's injury.  *Id.* at 72, 73.  Before the burden shifts, however, a plaintiff must satisfy three requirements.  *See id.* at 74 (describing requirements applied in a case that had adopted alternative liability).  First, the plaintiff must prove she was harmed by one of the defendants, which requires her to "'bring before the court all the actors who may have caused the injury in fact.'"  *Mulcahy*, 386 N.W.2d at 74 (quoting *Abel v. Eli Lilly & Co.*, 343 N.W.2d 164, 173 (Mich. 1984)); *see also Zands v. Nelson*, 797 F. Supp. 805, 813 (S.D. Cal. 1992) ("[J]oinder of all potential tortfeasors guarantees the presence of the responsible party.").  Second, the plaintiff must show all the defendants have acted tortiously.  *Mulcahy*, 386 N.W.2d 74.  Third, the plaintiff must show that through no fault of her own, she is unable to identify which defendant caused the injury.  *Id.*

Turning to the facts before it, the *Mulcahy* court held alternative liability inapplicable.  *Id.* It determined the plaintiffs could not satisfy the first requirement because they did not bring before the court all the manufacturers of DES that had supplied the relevant market.  *See id.* ("To say that the three named companies constitute the only possible manufacturers of the DES . . . is sheer speculation; any number of other manufacturers may have supplied DES to the Ames market.").  The court reasoned that applying the theory without all possible manufacturers "'would impose liability without fault upon any one who manufactured a product manufactured by others as well.'"  *Id.* (quoting *Namm v. Charles E. Frosst & Co.*, 427 A.2d 1121, 1128 (N.J. Super. Ct. App. Div.

1981)).  The court thus held the alternative liability did not apply on the facts before it, neither

adopting the theory nor ruling it out.  *See id.* at 74 (holding alternative liability inapplicable).

There Iowa law on the issue stood when the United States Court of Appeals for the Eighth

Circuit took up alternative liability in *Doe v. Baxter Healthcare Corp.*, 380 F.3d 399 (8th Cir. 2004).

The plaintiffs in *Doe* were parents of a hemophiliac child who they alleged became infected with

HIV as a result of hemophilia treatment between 1979 and 1985.  *Id.* at 402.  From 1979 to 1981,

the child was treated with cryoprecipitate, which carried a low risk of exposure.  *Id.*  From 1980 until

1985, he received non-heat-treated Factor VIII concentrate, which carried a higher risk of exposure.

*Id.*  The plaintiffs sued four Factor VIII concentrate manufacturers and invoked alternative liability.

*See id.* at 401 (stating issue before the court).  The issue before the Eighth Circuit was whether the

plaintiffs had presented enough evidence that the four Factor VIII concentrate manufacturers were

the only manufacturers who could be responsible for the child's HIV infection to survive summary

judgment.  *Id.*   Affirming summary judgment for the Factor VIII concentrate manufacturers, the

Eighth Circuit held the plaintiffs failed to negate cryoprecipitate as a cause of the infection.  *Id.* at

409–10.  Therefore, just as the Iowa Supreme Court did in *Mulcahy*, the Eighth Circuit found the

alternative liability theory did not apply to the facts before it.  *Id.* at 409.

Which is not to say the Eighth Circuit thought Iowa would reject alternative liability on

every set of facts.  To the contrary, it thought "the Iowa Supreme Court would adopt the alternative

liability theory and give it the contours discussed in [*Mulcahy*] if presented with the right facts."

*Id.*; *see also Zands*, 797 F. Supp. at 812 ("[T]he Court is unaware of any jurisdiction that has

rejected alternative liability when all requirements are met."); *Poole v. Alpha Therapeutic Corp.*,

696 F. Supp. 351, 355 (N.D. Ill. 1988) ("When all defendants are present, courts have adopted the

theory."); *In re Agent Orange Prods. Liab. Litig.*, 597 F. Supp. 740, 826 (E.D.N.Y. 1984) (Weinstein, J.) ("None of the courts rejected alternative liability when all the defendants were before the court."). Absent any clearer guidance on the theory from the Iowa Supreme Court, the Court believes Plaintiffs have sufficiently pleaded those facts.

Plaintiffs' Petition alleges sufficient facts to satisfy the first requirement of alternative liability. Under the theory, a plaintiff must "'bring before the court all the actors who may have caused the injury in fact.'" *Mulcahy*, 386 N.W.2d at 74 (quoting *Abel*, 343 N.W.2d at 173). The Petition concedes Plaintiffs cannot identify the specific manufacturer of the auger that allegedly injured Plaintiff Jeffery Oppedahl. [ECF No. 1-1 at 27 ¶ 11]. But it does allege that communication with IDOT has revealed "that the auger was purchased from" Central Mine, Mobile Drill, or USExploration. *Id.* at 26 ¶¶ 6, 3–4; *see also id.* at 27 ¶ 8 ("[T]hose three (3) Defendants have been specifically identified as the manufacturers from whom the auger being utilized by Jeffery Oppedahl on January 16, 2013 was purchased."). The Petition also narrows the dates on which IDOT purchased the particular auger: March 22, 2012; May 27, 2010; March 25, 2009; June 6, 2008; or June 26, 2005. *Id.* at 26 ¶ 5. Accepting the Petition's allegations as true, the Court is satisfied at this early stage that Plaintiffs have named all possible manufacturers of the auger that injured Plaintiff Jeffery Oppedahl, unlike the plaintiffs in *Mulcahy* and *Doe*.

Plaintiffs' Petition also pleads sufficient facts to satisfy the second and third requirements of alternative liability. *See id.* at 74 ("Plaintiffs also have the burden of showing that all the defendants have acted tortiously, and that plaintiffs, through no fault of their own, are unable to identify which actor caused the injury."). The Petition alleges Auger Defendants supplied augers "that had no safety cage or guard around the moving auger parts" and that they were negligent in

doing so.  [ECF No. 1-1 at 27 ¶¶ 9, 13].  It alleges also that Plaintiffs' counsel has been unable to determine which Auger Defendant's auger caused the injury despite investigating and inquiring with IDOT, which was similarly unable to identify whose auger was being used.  *Id.* at 26 ¶¶ 3–4, 27 ¶ 11.  Taken together, the Petition's allegations place this case not far from one hypothesized by the Iowa Supreme Court in *Mulcahy*.

Stepping back from the facts before it, the court suggested a case for alternative liability "might exist . . . if a plaintiff established that only two manufacturers' DES products were sold at a certain pharmacy, and the mother bought her DES only at that pharmacy but cannot identify which brand she purchased."  *Mulcahy*, 386 N.W.2d at 73.  Like the hypothetical mother unsure who manufactured the DES she bought, Plaintiffs allege that one of three manufacturers produced the auger that injured Jeffery, but despite investigating, they are unsure which.  With this hypothetical scenario in mind, and taking the Petition's allegations as true, the Court believes Plaintiffs have satisfied their obligation at this early stage.  *See Doe*, 380 F.3d at 409 (expressing belief Iowa would adopt alternative liability if presented with the right facts); *Mulcahy*, 386 N.W.2d at 73 (explaining the exception's basis is "'the injustice of permitting proved wrongdoers, who among them have inflicted an injury upon the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm.'" (quoting Restatement (Second) of Torts § 433B(3) cmt. f)); *Poole*, 696 F. Supp. at 355–56 ("The basic principle . . . is straightforward: as between an innocent plaintiff and negligent defendants, the latter should bear the cost of the injury." (internal citation and quotation marks omitted)).  Dismissal under Rule 12(b)(6) is therefore inappropriate.

## V.  CONCLUSION

In sum, the Court concludes Iowa's statute of repose for products-liability actions bars Plaintiff Jeffery Oppedahl's strict liability and negligence claims in Counts V and VI and thus dismissal of those Counts is appropriate.  As a result, dismissal of the loss of consortium claims in Counts VII and VIII follows.  In these respects, Mobile Drill's Motion to Dismiss [ECF Nos. 50; 31] is GRANTED.

The Court concludes also that dismissal of Count IX, alleged against Mobile Drill, Central Mine, and USExploration, is appropriate to the extent it relies on the theory of enterprise liability. In this respect, Mobile's Motion to Dismiss [ECF Nos. 50; 31], Central Mine's Motion to Dismiss [ECF Nos. 61; 24], and USExploration's Joinder in Motion to Dismiss [ECF No. 25] are GRANTED.  In contrast, the Court concludes Plaintiffs have stated a claim against Mobile Drill, Central Mine, and USExploration based on the theory of alternative liability.  In this respect, Mobile Drill's Motion to Dismiss [ECF Nos. 50; 31], Central Mine's Motion to Dismiss [ECF No. 61; 24], and USExploration's Joinder in Motion to Dismiss [ECF No. 25] are DENIED.  Thus, Count IX remains, but only to the extent it is based on alternative liability.  Counts X and XI remain as well.

IT IS SO ORDERED.

Dated this 9th day of June, 2015.


_____
STEPHANIE M. ROSE
UNITED STATES DISTRICT JUDGE